UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RODNEY WILLIAMS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1259** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION: "G" (3)** |

## ORDER AND REASONS

Before the Court are Plaintiff Rodney Williams' ("Williams") Objections to the Magistrate Judge's Report and Recommendations,[1] wherein Williams requests that the Court reverse the denial of his application for benefits under the Social Security Act by an Administrative Law Judge ("ALJ") or remand his claim to the ALJ for a new hearing. Having considered Williams' objections, the cross motions for summary judgment filed by both Williams and Defendant Social Security Administration (the "Commissioner"), the magistrate judge's Report and Recommendation, the record, and the applicable law, for the following reasons the Court will grant the Commissioner's motion for summary judgment and deny Williams' motion for summary judgment.

## I. Background

### A.   *Factual Background*

On March 11, 2010, Williams applied for Supplemental Security Income ("SSI") benefits and disability insurance benefits, under Title XVI and Title II, respectively, of the Social Security Act (the "Act").[2] He alleged a disability onset date of March 6, 2010.[3] Williams alleged disability due to a heart condition (stent placement), numbness in his left arm with limited use, fainting spells,

---

[1] Rec. Doc. 19.

[2] Rec. Doc. 10 at pp. 153-63.

[3] *Id.*

1

constant dizziness, shortness of breathe, swelling, and depression.[4] The Commissioner initially denied Williams' application on July 8, 2010.[5]

Williams sought and received a hearing before an ALJ on March 2, 2011.[6] At this hearing, the ALJ considered the records, reports, and findings of two psychiatric experts who had evaluated Williams, and heard the testimony of Williams and an impartial vocational expert. The ALJ made the following determinations relevant to Williams' objections: (1) Williams had "severe" impairments listed as status post-cardiac stent placement, status post-right popliteal artery percutaneous arthrectomy, and depression; (2) Williams did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the relevant regulations; and (3) while he could not perform "past relevant work," Williams was able to perform sedentary work despite his impairments.[7] Given those findings, the ALJ concluded that Williams was not disabled and denied his request for benefits.[8]

## B.   *Procedural Background*

Williams sought review of the ALJ's determination from the Appeals Council, which denied his request on March 15, 2012.[9] As Williams had exhausted his administrative remedies,[10] he filed

---

[4] *Id.* at pp. 39, 184, 223.

[5] *Id.* at p. 10.

[6] *Id.* at pp. 20-56.

[7] *Id.* at pp. 12-22.

[8] *Id.* at p. 22.

[9] *Id.* at 1-6.

[10] *See McCain v. Apfel*, 168 F.3d 152, 155 (5th Cir. 1999) (citation omitted) (a court cannot review the Commissioner's final decision unless the claimant has exhausted his administrative remedies; exhaustion requires raising claim of error to the Appeals Council).

a complaint against the Commissioner in this Court on May 15, 2012.[11] Magistrate Judge Knowles issued a report and recommendation on May 31, 2013, recommending that the Court grant the Commissioner's motion for summary judgment and deny Williams' motion for summary judgment, thereby affirming the ALJ's decision to deny Williams disability benefits.[12] Williams timely filed his objections to the recommendation.[13]

### B.   *Williams' Objections to the Magistrate Judge's Report and Recommendations for this Court's Review*

Williams raises two objections to the Magistrate Judge's report and recommendation. Williams first attacks the ALJ's reliance upon the findings of one of the psychiatric experts, Sandra Durdin.[14] Williams argues that Durdin's report is irrelevant because Durdin "saw plaintiff only once, more than two years prior" to his alleged disability onset date of March 6, 2010.[15] He next argues that the ALJ's decision improperly rests upon the ALJ's own psychiatric opinion rather than the findings of Williams' treating psychiatrist, Richard Burns, whose findings and observations were also in the record before the ALJ.[16]

As such, Williams contends that the ALJ improperly relied upon Durdin's opinion while wrongfully rejecting Burns' reports and findings.[17] Williams cites two cases from the Fifth Circuit

---

[11] Rec. Doc. 1.

[12] Rec. Doc. 19.

[13] Rec. Doc. 15.

[14] Rec. Doc. 20-1 at p.1

[15] Rec. Doc. 20-1 a p. 1.

[16] *Id.*

[17] Rec. Doc. 20-1 at p. 4.

3

to support his general proposition that "in the absence of relevant and contrary expert medical opinion, the findings of the treating physicians must be sustained, or, at least, another medical opinion on relevant issues regarding relevant periods of time must be obtained."[18] Accordingly, and because he asserts that Durdin's opinions are irrelevant, Williams argues that the ALJ should have credited Burns' findings and opinions, which he claims establish Williams' disability under either section 12.03 of the Commissioner's Listing of Impairments in 20 C.F.R. pt. 404, subpt. P, appx. 1 (the "Listings") or Social Security Ruling ("SSR") 96-9p.[19]

## II. Standards of Review

### A.     *Review of Magistrate Judge's Report and Recommendation*

When designated by the district court to do so, a United States magistrate judge may consider motions for summary judgment and recommend their disposition to the district court judge in accordance with the magistrate judge's findings of fact and determinations of law.[20] However, when a party timely objects to a magistrate judge's recommendation, the district court must review the matter de novo.[21]

Review of an ALJ's decision to deny disability benefits is limited to determining whether the ALJ's decision is supported by "substantial evidence on the record as a whole" and is based on the proper legal standard.[22] The ALJ's decision is supported by "substantial evidence" when it rests upon

---

[18] *Id.* a p. 9 (citing *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003); *Williams v. Astrue*, 355 F. App'x 828 (5th Cir. 2009).

[19] *Id.* at 3.

[20] *See* 28 U.S.C. § 636(b).

[21] *See* Fed. R. Civ. P. 72(b)(3).

[22] *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citation omitted).

"such relevant evidence as a reasonable mind might accept as adequate" to support the conclusion.[23] Thus, a court must uphold the decision when it is supported by a weight of evidence described as "more than a mere scintilla and less than a preponderance."[24] While a court must examine the record to determine whether such evidence is present, it cannot re-weigh the evidence.[25] Moreover, a district court cannot substitute its judgment for that of the ALJ.[26] If the ALJ's findings of fact are supported by substantial evidence, they are conclusive.[27]

A court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."[28]

### B.     *Standard on a Motion for Summary Judgment Reviewing the Commissioner's Final Decision on Benefits*

The Court notes that both Williams and the Commissioner have moved for summary judgment. The standard of review applicable to such motions requires that a moving party establish that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law.[29] Under 42 U.S.C. § 405(g), however, this Court may examine only the pleadings and the record relied upon by the ALJ. Thus, there cannot generally be a disputed issue of fact

---

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

[29] Fed. R. Civ. P. 56(c).

before the Court in Social Security appeals.[30] Instead, "[t]he issue is whether the action of the Secretary is supported by the Record."[31] Even so, the Fifth Circuit has regularly allowed district courts to rule on Social Security disputes through the summary judgment procedure, at least when "the district court has adequately reviewed the record and based its judgment on a finding of substantial evidence in the administrative record."[32]

### III. Law and Analysis

#### A. *Law – An ALJ's Evaluation of a Disability Claim*

An ALJ's evaluation of a disability claim involves a five-step process.[33] The claimant has the burden of proof on the first four steps. First, he must establish that he is not presently working at any substantial gainful activity.[34] Second, he must have an impairment or combination of impairments that are severe; a "severe" impairment is one that "significantly limits" a claimant's physical or mental ability to do basic work activities.[35] Third, the impairment must meet or equal an impairment listed in the appendix to the regulations.[36] Fourth, the impairment must prevent the claimant from returning to his past relevant work.[37]

---

[30] *See Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981).

[31] *Id.* (citing *Igonia v. Califano*, 568 F.2d 1383, 1389 (D.C. Cir. 1977)).

[32] *Id.*; *see also, e.g.*, *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (setting forth both the summary judgment and substantial evidence standards of review).

[33] *Shave v. Apfel*, 238 F.3d 592, 594 (5th Cir. 2001).

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

Once a claimant has met his burden on the first four steps, the burden shifts to the Commissioner for the fifth and final step. At this stage, the Commissioner must establish that there is other gainful employment that the claimant is capable of performing, even with his existing impairments.[38] If the Commissioner establishes that such work exists, the claimant must prove that he cannot in fact perform the work; failure to do so requires the ALJ to find the claimant is not disabled.[39]

### B. *Analysis – Commissioner's Denial of Williams' Claim*

The ALJ found that Williams' depression was "severe" within the meaning of the Act.[40] However, the ALJ determined that his impairments did not meet or medically equal any impairment listed under the applicable regulations in 20 C.F.R. pt. 404, subpt. P, appx. 1.[41] The ALJ further found that Williams retained sufficient residual functional capacity to perform sedentary work.[42] She next determined that while Williams would be unable to perform "past relevant work" akin to his prior work experience, Williams nonetheless would be able to perform other jobs.[43] Accordingly, the ALJ concluded that Williams was not disabled.[44] The Court may disturb that finding only if the ALJ lacked "substantial evidence" to support it.[45]

---

[38] *Id.*

[39] *Id.*

[40] Rec. Doc. 10 at p. 13.

[41] *Id.*

[42] *Id.* at pp. 14-20.

[43] *Id.* at pp. 20-22.

[44] *Id.* at p. 22.

[45] *See Perez*, 415 F.3d at 461

7

Generally, the opinions and diagnoses of a treating physician who is familiar with a claimant's injuries and responses "should be accorded considerable weight" when determining disability.[46] However, "when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony."[47] Among the exceptions that constitute "good cause" are "statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or [are] otherwise unsupported by the evidence."[48] Moreover, the ALJ is "entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly."[49] Finally, the treating physician's opinions "are far from conclusive."[50] "[T]he ALJ has the sole responsibility for determining the claimant's disability status."[51]

Williams argues that Burns' findings required the ALJ to determine that Williams was disabled. In a check-box form that Burns completed on December 7, 2010, Burns found that Willams demonstrated medically documented persistent symptoms of delusions and auditory hallucinations.[52] Burns further asserted that Williams demonstrated both flat affect and emotional withdrawal and that Williams also suffered from "extreme" restrictions on activities of daily living and "marked" difficulties in both maintaining social functioning and in maintaining concentration, persistence, or

---

[46] *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (citation omitted).

[47] *Id.*

[48] *Id.*

[49] *Id.* (citations and internal quotation marks omitted).

[50] *Id.*

[51] *Id.*

[52] Rec. Doc. 10 at p. 587.

8

pace.[53] Likewise, Burns reported that Williams suffered a "substantial loss of ability" to (1) understand, carry out or remember simple instructions, (2) make judgments commensurate with the requirements of unskilled work, (3) respond appropriately to supervision, coworkers or usual work situations, and (4) deal with changes in routine work settings.[54] Burns concluded that Williams "suffers from severe depression as well."[55]

The ALJ, however, found Burns' conclusions to be conclusory and not credible in light of Burns' other findings and the findings of Sandra Durdin. As to Burns' assessment, the ALJ noted that she gave it "little weight as the limitations set forth [did] not correspond to his own hard to read handwritten notes showing the claimant was doing 'much better' and that his depression was mild."[56] She further noted that Burns' assessment "appear[ed] to unduly rely upon [Williams'] subjective history as an overriding basis, rather than actual testing."[57] Finally, the ALJ highlighted Burns' observation of Williams on January 26, 2011, which noted that Williams was responding well to medication; the ALJ noted that the Fifth Circuit has held that "[a] medical condition that reasonably responds to medications or therapy cannot be considered disabling[]" and that therefore Williams could not be considered disabled. [58]

Meanwhile, the ALJ credited the findings and observations of Durdin, who examined Williams on January 12, 2008. Durdin noted that Williams' "attention and concentration were

---

[53] *Id.*

[54] *Id.* at p. 588.

[55] *Id.*

[56] *Id.* at p. 20.

[57] *Id.*

[58] *Id.* at p. 18 (citing *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

9

good[]" and that Williams demonstrated a "normal" affect and mood.[59] Durdin also observed that Williams had "adequate" memory and overall cognitive skills, and an average level of intellectual functioning.[60] Durdin further observed that Williams' "[i]nsight and judgment are likely impaired by alcohol and or other substances, given his history and lack of treatment at this time."[61] She noted that Williams "is not psychotic[]" and that Williams possessed the "ability to understand, remember and carry out simple instructions and detailed instructions is adequate assuming sobriety and compliance."[62] Williams also exhibited an "adequate" ability to "maintain attention to perform simple repetitive tasks for two hour blocks of time[.]"[63] Durdin noted that Williams' ability to relate to others was "fair," but that "[h]e appears to have interpersonal issues."[64] Finally, she observed that Williams had a "fair" ability to tolerate stress and pressure associated with daily work activity and that "[h]e is capable of managing his personal financial affairs if sober."[65]

Williams argues that Durdin's findings are irrelevant because they were made and recorded two years before Williams' alleged onset date of March 6, 2010. Nevertheless, there is authority to support that Durdin's findings may still carry some weight because they provide insight into

---

[59] *Id.*

[60] *Id.* at p. 345.

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.*

Williams' mental health in the not too distant past.[66] Additionally, when the Court also considers Burns' notes from January 26, 2011, Durdin's findings further provide some evidence to establish that Williams was able to overcome his mental impairments with appropriate treatment.[67]

Therefore, this Court finds that the ALJ closely considered the findings and opinions of both psychiatric experts, and that she permissibly gave credibility and weight to those findings, as she saw fit, that were supported by direct evaluation and observation. Williams' argument that the ALJ substituted her own medical opinion for that of Burns is therefore without merit.[68]

The record thus supports and provides, at a minium, "more than a mere scintilla" of evidence to support the ALJ's determination that Burns' diagnosis was conclusory.[69] Additionally, the record also supports a determination that Burns' findings were "contradicted by both itself and outside medical evidence."[70] In light of that credibility determination, Durdin's opinions, despite their age, also provide more than a scintilla of evidence to support the ALJ's finding that Williams was not

---

[66] *See, e.g., Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("Even if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ.");

[67] *See* Rec. Doc. 10 at p. 345 ("He does not have a history compatible with schizophrenia. . . . His ability to tolerate the stress and pressure associated with day-to-day work activity and demands is fair. He is capable of managing his personal financial affairs if sober.").

[68] *See* Rec. Doc. 20-1 at pp. 7-9 (citing *Frank*, 326 F.3d at 621; *Williams*, 355 F. App'x at 831). Moreover, Williams' cited cases do not lend him the support he seeks. In *Frank*, the Fifth Circuit declined to address the question of whether the ALJ in that case made his own medical conclusions because, like the decision at issue here, "the overwhelming factor in the [ALJ's] decision was medical evidence from a variety of sources" establishing that the claimant could handle working in her prior job. 326 F.3d at 622. Meanwhile, in *Williams*, the Fifth Circuit found that the ALJ's decision was not supported by substantial evidence when the ALJ did not give the opinions of three physicians controlling weight. 344 F. App'x at 832. The relevant distinction, however, is that the Fifth Circuit in *Williams* found that there was no evidence in the record to support the ALJ's finding that the claimant could stand or walk for most of an eight-hour work day. *Id.* Here, there is substantial evidence to support the ALJ's finding because it is supported by the findings and opinions of both Burns and Durdin.

[69] *Perez*, 415 F.3d at 461.

[70] *See Greenspan*, 38 F.3d at 238

11

disabled as alleged on March 6, 2010. Accordingly, the ALJ had sufficient medical evidence, including from Burns' non-conclusory findings, from which to conclude that Williams' mental impairment was not severe enough to qualify him as disabled because he retained sufficient residual functional capacity to perform sedentary work. In short, "[a] reading of the ALJ's decision shows that [she] carefully considered, but ultimately rejected," Burns' conclusion that Williams was disabled.[71] The ALJ's determination is supported by substantial evidence, and therefore this Court may not disturb those findings.[72]

### IV. Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Court **ADOPTS** the magistrate judge's recommendation;

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment[73] is **GRANTED** and that Williams' claims are **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** the Williams' motion for summary judgment[74] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, on this __27th__ day of August, 2013.

*[signature]*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[71] *See id.*

[72] *See id.*

[73] Rec. Doc. 17.

[74] Rec. Doc. 14.

12